Scott ARMSTRONG, et al., Plaintiffs,

v.

**EXECUTIVE OFFICE OF
THE PRESIDENT, et
al., Defendants.**

**Civ. A. No. 89–142 (CRR).**

United States District Court,
District of Columbia.

Jan. 6, 1993.

Michael E. Tankersley, with Alan B. Morrison, Public Citizen Litigation Group, Washington, DC, were on the briefs, for plaintiffs.

Jason R. Baron, Atty., U.S. Dept. of Justice, Civil Div., Washington, DC, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., District of Columbia, and David J. Anderson, Elizabeth A. Pugh, Peter D. Coffman, and Stephen G. Harvey, Attys., U.S. Dept. of Justice, Civil Div., Washington, DC, were on the briefs, for defendants.

## TABLE OF CONTENTS

I. INTRODUCTION .................................................... 337
II. DISCUSSION ...................................................... 339
 A. THE STATUTORY COMMAND FROM 1943 THROUGH THE LAST AMENDMENT BY CONGRESS IN 1984 SHOWS A CLEAR LEGISLATIVE PURPOSE THAT RECORDS OF HISTORICAL VALUE INVOLVING THE PUBLIC, REGARDLESS OF PHYSICAL FORM, SHALL BE PRESERVED, PARTICULARLY WHERE SUCH MATERIAL REFLECTS THE FUNCTION, POLICIES, DECISIONS, PROCEDURES, OPERATIONS OR OTHER ACTIVITIES OF THE GOVERNMENT OR BECAUSE OF THEIR INFORMATIONAL VALUE. ........................................................ 339
 B. THE INFORMATION ON THE DEFENDANTS' PROFS, OASIS AND A–1 SYSTEMS IS SUBJECT TO THE FRA BECAUSE IT MEETS THE STATUTORY DEFINITION OF A RECORD. .................. 340

C. THE ELECTRONIC MATERIAL CREATED OR STORED ON THE DEFENDANTS' PROFS, OASIS AND A–1 SYSTEMS CONTAIN INFORMATION THAT IS NOT REPRODUCED ON ANY PAPER COPIES. THEREFORE, PRINTING THE SUBSTANCE OF THESE MATERIALS IN PAPER FORM DOES NOT SATISFY THE REQUIREMENTS OF THE FRA AS IT DOES NOT SHOW WHO HAS RECEIVED THE INFORMATION AND WHEN. ........ 341

D. THE DEFENDANTS'S RECORD KEEPING PROCEDURES ARE ARBITRARY AND CAPRICIOUS BECAUSE THERE IS NO ADEQUATE MANAGEMENT PROGRAM OR SUPERVISION BY RECORD KEEPING PERSONNEL OF THE STAFF'S DETERMINATION OF RECORD OR NON–RECORD STATUS OF COMPUTER MATERIAL. ..................................................... 342

E. THE EOP'S RECORD KEEPING GUIDELINES AT THE TIME THIS SUIT WAS FILED WERE ARBITRARY AND CAPRICIOUS BECAUSE THE GUIDELINES DID NOT PROVIDE SUFFICIENT GUIDANCE TO DETERMINE WHAT WAS A FEDERAL RECORD THAT MUST BE PRESERVED AND THEY ALSO PERMIT THE DESTRUCTION OF FEDERAL RECORDS. ........................ 344

F. THE NSC'S RECORD KEEPING GUIDELINES AT THE TIME THIS SUIT WAS FILED WERE ARBITRARY AND CAPRICIOUS BECAUSE THE GUIDELINES DID NOT PROVIDE SUFFICIENT GUIDANCE TO DETERMINE WHAT WAS A FEDERAL RECORD THAT MUST BE PRESERVED AND TO DETERMINE THE DIFFERENCE BETWEEN FEDERAL RECORDS, PRESIDENTIAL RECORDS AND NON–RECORD MATERIAL. ...................... 345

G. THE COURT SHALL REMAND THIS CASE TO THE ARCHIVIST FOR IMMEDIATE REMEDIAL ACTION UNDER THE FRA TO PREVENT THE DESTRUCTION OF FEDERAL RECORDS. ........ 348

H. THIS COURT HAS JURISDICTION TO ORDER THE PRESERVATION OF THE DEFENDANTS' ELECTRONIC RECORDS UNTIL THE ARCHIVIST CAN TAKE APPROPRIATE ACTION REQUIRED BY II(G) ABOVE. HOWEVER, THE COURT CANNOT ORDER THE PRESERVATION OF RECORDS CREATED BY EOP COMPONENTS WHOSE SOLE RESPONSIBILITY IS TO ADVISE THE PRESIDENT BECAUSE THERE IS NO JUDICIAL REVIEW OF THE PRA. ................................................. 349

III. CONCLUSION ...................................................... 349

## OPINION

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION

This case is before the Court on the merits of the Plaintiffs' claims under Counts II and III of the Third Amended Complaint.[1] This case was filed in 1989 against Ronald Reagan, President of the United States, *inter alia,* just before his term of office ended.[2] In September 1989, this Court denied the Defendants' motion to dismiss or, in the alternative, for summary judgment. This Court held that

1. The Defendants have also filed a motion for summary judgment as to the Plaintiffs' claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552, *et seq.,* contained in Count I of the Third Amended Complaint. However, as the Plaintiffs have recently filed an amended FOIA request with the Defendants, this claim is not yet ripe for review.

In addition, the Plaintiffs' Complaint had originally included a claim under the Presidential Records Act. However, this claim has been omitted from the Third Amended Complaint and therefore need not be considered by the Court.

2. The Plaintiffs present suit is against the Executive Office of the President ("EOP"), the National Security Council ("NSC"), and the Archivist of the United States.

§ 702 of the Administrative Procedure Act ("APA") provided for judicial review of the Defendants' compliance with the Presidential Records Act ("PRA"), 44 U.S.C. § 2201 et seq., and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2910, 3101–3107, and 3301–3324. In addition, the Court determined that there were unresolved factual issues regarding whether the Defendants had complied with the recordkeeping statutes. *Armstrong v. Bush*, 721 F.Supp. 343 (D.D.C.1989).

Thereafter, an appeal was taken. The Court of Appeals for the District of Columbia Circuit approved of this Court's holding that the APA provides for limited review of the adequacy of the NSC's and EOP's recordkeeping guidelines and instructions pursuant to the FRA. *Armstrong v. Bush*, 924 F.2d 282, 291–293 (1991). The Court of Appeals also held that the APA does not provide judicial review of the President's compliance with the PRA. *Id.* at 288–291. Finally, the Court of Appeals remanded for further development of the record to determine whether the electronic communications systems operated and controlled by the Defendants were within appropriate and proper guidelines as required by law and regulations issued thereunder by the

Archivist of the United States, who is also a Defendant here. *Id.* at 296–297.[3]

In other words, the basic question is whether on this record, which counsel for the parties agree is ready for a decision on the merits, the Defendants have complied with the statutory requirements and whether the guidelines are reasonable or sufficiently clear as to provide adequate guidance to personnel employed by the Defendants in their maintenance and preservation of federal records. The other issue is whether the United States Archivist has fulfilled his statutory duties under the Federal Records Act. 44 U.S.C. § 2905.

In light of the foregoing, the Plaintiffs particularly seek preservation of and access to the Defendants' computerized systems known as PROFS, OASIS, and A–1, on which the Defendants send e-mail, write documents, transmit messages inter- and intra-agency and perhaps even to people outside the official government payroll.[4] These computerized systems contain transmit logs indicating to whom messages and documents were sent by date, time and hour.[5] They also have Receipt logs containing the same or similar information.

---

**3.** After remand, the Plaintiffs filed a Third Amended Complaint to include information about new electronic communication systems used by the Defendants. In the Third Amended Complaint, the Plaintiffs allege that the guidelines issued by the Defendants are arbitrary and capricious in violation of the FRA because they authorize destruction of agency records and that the Archivist has violated his statutory duty to initiate action to stop improper destruction of agency records on these electronic communications systems. *See* Third Amended Complaint at 13–15. The Third Amended Complaint dropped the President as a Defendant, and set forth the following Defendants: the EOP, the Office of Administration ("OA"), the NSC, and the White House Communications Agency ("WHCA").

**4.** Both the EOP and the NSC copy the information on their electronic communication systems (PROFS, OASIS, and A–1) onto backup tapes. The backup tapes contain a snapshot of the information stored on the these systems at a given moment and can be used to retrieve data that is captured on the tape. The purpose of the backup tapes is to ensure that agency personnel are able to recover data as quickly and efficiently as possible if the computer system fails or files stored on it are inadvertently deleted.

The same day this suit was filed, the Plaintiffs received a Temporary Restraining Order prohibiting the Defendants from erasing certain material stored on the National Security Council's ("NSC") Professional Office ("PROFS") computer system during the Reagan administration. As a result of the Temporary Restraining Order and a stipulation entered on January 31, 1989, the Defendants have preserved the computer tapes of the material stored in 1989.
A second Temporary Restraining Order was entered on November 20, 1992 requiring the Defendants to preserve all the current and existing computer backup tapes in their custody from their electronic communication systems. At a status conference on December 4, 1992, the Defendants agreed to maintain these backup tapes until January 7, 1993.

**5.** The systems are also used to transmit electronic mail and to generate calendars of appointments and meetings. They are also used for creating and editing of memoranda, and transferring files and documents in electronic format. The creation and transmittal of electronic mail, in the form of "notes" is the most commonly used function of the systems.

While Plaintiffs are now on the Third Amended Complaint and while each side has filed cross motions for summary judgment, the Court, with consent of counsel, has combined the parties cross motions for Summary Judgment with a decision on the merits.[6] The Court also determined that it was reasonable to make findings of fact and conclusions of law on the basis of the joint submissions of the parties because it was unclear, based on the parties separate submissions, whether there was a material issue of fact in dispute.[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Local Rule 108(h).

After careful consideration of the foregoing, the Court, with the consent of counsel, has combined the Plaintiffs' request for a Preliminary Injunction with their request for Declaratory and Injunctive relief on the merits pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. Accordingly, this opinion shall constitute the Court's findings of fact and conclusion of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

■ The Defendants' record keeping guidance pursuant to the FRA is subject to review under the APA. Under the APA, the reviewing court shall compel "agency action unlawfully withheld or unreasonably delayed" 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In examining an agency's action under the APA, the first question is whether the agency properly interpreted the statute involved. The second question is whether the agency action was arbitrary and capricious. Under this second inquiry, an agency action can be set aside if it fails to offer an adequate explanation for its action or fails to consider a relevant factor in reaching its decision, *see International Fabricare Institute v. EPA*, 972 F.2d 384, 389 (D.C.Cir.1992); *Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1089 (D.C.Cir.1986), but the reviewing court is not to substitute its judgment for that of the agency. *See Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *Adams House Health Care v. Sullivan*, 895 F.2d 767, 770 (D.C.Cir.1990); *Center for Auto Safety v. Peck*, 751 F.2d 1336, 1342 (D.C.Cir.1985).

A. THE STATUTORY COMMAND FROM 1943 THROUGH THE LAST AMENDMENT BY CONGRESS IN 1984 SHOWS A CLEAR LEGISLATIVE PURPOSE THAT RECORDS OF HISTORICAL VALUE INVOLVING THE PUBLIC, REGARDLESS OF PHYSICAL FORM, SHALL BE PRESERVED, PARTICULARLY WHERE SUCH MATERIAL REFLECTS THE FUNCTION, POLICIES, DECISIONS, PROCEDURES, OPERATIONS OR OTHER ACTIVITIES OF THE GOVERNMENT OR BECAUSE OF THEIR INFORMATIONAL VALUE.

■ The Federal Records Act governs the creation, management and disposal of federal records.[8] The FRA defines a federal record as:

all books, papers, maps, photographs, machine readable materials, or other documentary materials, *regardless of physi-*

---

6. The parties did not wish to present any witnesses or further evidence beyond what has been presented to the Court in their papers.

7. Pursuant to a request by the Court made at a status conference on December 4, 1992, the parties filed a Joint Statement of Facts on December 8, 1992.

8. The FRA is a series of statutes, beginning with the 1943 Disposal of Records Act, ch. 192, 57

Stat. 380, and the Federal Records Act of 1950, ch. 849, 64 Stat. 583. These acts were subsequently amended by the Government Records Disposal Amendments of 1970, 84 Stat. 320, the Federal Records Management Amendments of 1976, 90 Stat. 2723, and the National Archives and Records Administration Act of 1984, 98 Stat. 2280. *See Armstrong v. Bush*, 924 F.2d 282, 284 n. 1 (D.C.Cir.1991).

*cal form or characteristics,* made or received by an agency of the United States under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency ... *as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of the data in them.*

44 U.S.C. § 3301 (emphasis added). The plain language of the statute and legislative history show a clear legislative purpose to allow private researchers and those whose rights may have been affected by the actions of government to have access to the records under the FRA. *See American Friends Service Comm'n v. Webster,* 720 F.2d 29 (D.C.Cir.1983); *Armstrong v. Bush,* 924 F.2d 282, 287–88.

Therefore, each agency head must "maintain an active, continuing program for the economical and efficient management of the records of the agency," 44 U.S.C. § 3102, and establish "safeguards against the removal or loss of records he determines to be necessary and required by the Archivist." *Id.* § 3105. In turn, the Archivist is to provide "guidance and assistance to the Federal agencies with respect to ensuring adequate and proper documentation of the policies and transactions of the Federal government and ensuring proper record disposition." *Id.* § 2904(a). Federal records may only be destroyed after the Archivist's review and approval.[9] *Id.* § 3314.

**B. THE INFORMATION ON THE DEFENDANTS' PROFS, OASIS AND A–1 SYSTEMS IS SUBJECT TO THE FRA BECAUSE IT MEETS THE STATUTORY DEFINITION OF A RECORD.**

■ The threshold issue before the Court is whether the material created or saved on the Defendants' computer systems falls under the FRA's definition of federal records. On the one hand, the Defendants urge the Court to rule that none of the material on the PROFS, OASIS, and A–1 systems are records under the FRA. The Defendants also argue that any record material on the systems has been saved by its staff in "hard" or paper copy and thus any materials on these electronic communications systems records are simply copies preserved for the convenience of reference.[10] *See* 44 U.S.C. § 3301. On the other hand, the Plaintiffs argue that all the material contained on the Defendants' computer systems meet the statutory definition of records under the FRA and cannot be destroyed without approval of the Archivist. *See* 44 U.S.C. §§ 3302, 3303, 3303a.

The Court does not agree with the extreme positions taken by either party. On the one hand, the Court will not and cannot read the FRA to exclude computer systems such as those at issue here. The statutory language makes clear that the FRA was intended to include materials "regardless of physical form or characteristic." 44 U.S.C. § 3101. Furthermore, the Court cannot assume that the Defendants' staff are being advised to save all computer records in paper form because the Plaintiffs have explicitly challenged this contention. *See* Joint Statement of Facts, No. 83, at 25. In addition, the Defendants' argument assumes that a federal record on these systems is exactly the same as a version printed out on paper, a contention that the Plaintiffs dispute as well.

However, it would also be inconsistent to declare that all materials on these electronic communications systems are records, as the Plaintiffs request, where it is clear that these systems produce many non-record or presidential record materials that are not

---

**9.** The FRA establishes procedure in which the agencies submit lists and schedules of records to be disposed of to the Archivist. 44 U.S.C. § 3302(1). The Archivist must examine the lists or schedules submitted to him by agencies to determine whether or not any of the records "have sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government...." *Id.* § 3303a.

**10.** The Defendants argue that it has instructed its staff that all material on these computer systems that constitutes a federal record must be printed out in paper form and saved and, therefore, all materials on these computer systems are copies saved only for convenience.

the subject of this suit. The factual record before the Court shows that while these computer systems can be and are used for substantive communications by staff, they are also used to convey information that does not rise to the level of a record.[11] Under the APA, it is not for this Court to second guess the wisdom of agency policies, but simply to determine if the policies are arbitrary and capricious or not in accordance with the law.

C. THE ELECTRONIC MATERIAL CREATED OR STORED ON THE DEFENDANTS' PROFS, OASIS AND A–1 SYSTEMS CONTAIN INFORMATION THAT IS NOT REPRODUCED ON ANY PAPER COPIES. THEREFORE, PRINTING THE SUBSTANCE OF THESE MATERIALS IN PAPER FORM DOES NOT SATISFY THE REQUIREMENTS OF THE FRA AS IT DOES NOT SHOW WHO HAS RECEIVED THE INFORMATION AND WHEN.

■ With the two extreme positions above rejected, the Court concludes that some of the material stored on these computer systems do meet the definition of record under the FRA and must be saved, regardless of whether a paper or hard copy of the material has been printed out.

The Defendants' record keeping guidelines give its staff the responsibility of deciding whether material on the PROFS, OASIS, and A–1 systems are records under the FRA. Once it has been determined that a certain PROFS, OASIS or A–1 note or document is a federal record, the Defendants allegedly instruct their staff to print out this information in paper form. However, even assuming *arguendo,* that the staff are properly preserving computer material that are federal records by printing out a copy of the material on paper, the Defendants nevertheless have not complied with FRA. The electronic material on the PROFS, OASIS, and A–1 systems are qualitatively different than a copy printed out in paper form and, therefore, the Defendants' record keeping system violates the FRA because it does not save all the information contained in these electronic records.

A paper copy of the electronic material does not contain all of the information included in the electronic version. For example, a note distributed over these computer system includes information that is not reproduced on the paper copy regarding who has received the information and when the information was received, neither of which is reproduced on the paper copy. *See* Affidavit of Eddie Becker, Plaintiffs' Exhibit Q. In addition, distribution lists contained on these computer systems are used by staff to route documents. These lists are maintained separately from the material being sent, which will simply designate a code that tells the systems which distribution list to use. The distribution lists are not necessarily printed out when the material is saved in paper form.

Such information can be of tremendous historical value in demonstrating what agency personal were involved in making a particular policy decision and what officials knew, and when they knew it.[12] Requiring the preservation of such information is consistent with the legislative history of the FRA, which clearly shows that "Congress intended, expected, and positively desired private researchers and private parties whose rights may have been affected by government actions to have access to the documentary history of the federal government." *American Friends Service Comm'n v. Webster,* 720 F.2d 29, 57 (D.C.Cir.1983).

Secondly, Congress was aware that, when left to themselves, agencies have a

---

**11.** Even the Plaintiffs admit that some PROFS communications convey information that does not constitute federal records. The Plaintiffs' position is that a substantial amount of the electronic mail is record material. *See* Joint Statement of Fact at 16–18.

**12.** The Court does not agree with the Defendants' contention that this information has no value. The question of what government officials knew and when they knew it has been a key question in not only the Iran–Contra investigations, but also in the Watergate matter.

The historical value of this information is best illustrated by the amount of information contained in PROFS notes that was used during the Iran–Contra investigation. *See* Plaintiffs' Exhibits B, Q, R, T.

built-in incentive to dispose of records relating to their mistakes or simply do not think about preserving information. *Id.* at 41. Thus, the FRA requires the Archivist to "establish standards for the selective retention of records of continuing value, and assist Federal agencies in applying the standards to records in their custody." 44 U.S.C. § 2905. Pursuant to this authority, the Archivist has issued regulations and a Records Management Handbook containing additional criteria for appraising records of permanent value. The regulations issued by the National Archives and Records Administration ("NARA")[13] are persuasive authority in considering what is reasonable conduct under the FRA. The NARA is unquestionably concerned about the creation of federal records on electronic medium: "Special attention must be given to machine-readable records.... Unquestionably, those media are slowly replacing paper records." NARA Handbook, Disposition of Federal Records, 1989, at 1.

In fact, even if this electronic information was the same as that produced on paper, the NARA has issued several guidelines on the disposition of records stating that "[i]f the same information is stored on more than one medium (such as paper and disk), agencies, in consultation with the NARA should schedule the disposition of all copies." *See* NARA Bulletin No 85–2, dated June 18, 1985, (Plaintiffs' Exhibits, Vol. I., No. 1, attachment A, at 5, ¶ e); NARA Bulletin 87–5, dated February 2, 1987 (Plaintiffs' Exhibits, Vol. I., No. 2, attachment A, at 5, ¶ e).

In common terms, a record is defined as "an account made in an enduring form, especially in writing, that preserves the knowledge or memory of events or facts" and "something on which such an account is made." The American Heritage Dictionary, 1976. These computer materials certainly fit into an everyday understanding on a record.

The Defendants contend "[s]tanding by themselves, such miscellania such as lists of individual senders and recipients, times of acknowledgement, and accounting records of log-on and log-off times, do not rise to the level of a federal 'record.'" Defendants' Reply Memorandum in Support of Summary Judgement, August 8, 1992, at 35 n. 33. However, the Defendants' argument misses the point because this information does not stand alone. This information must be saved because, in combination with the substantive information contained in the electronic material, it will convey information about who knew what information and when they knew it.

The Defendants also cite General Record Schedule 23 for the proposition that after an electronic medium is used to produce a hard copy which is maintained in organized files, the electronic version may be deleted. Joint Statement of Facts No. 83, at 25. The Court does not find such reasoning persuasive. Neither the EOP nor the NSC relies on General Record Schedule 23 as authorization for deleting information from their respective computer systems or routinely destroying backup tapes of information stored on the PROFS systems. *Id.* No. 84, at 25.

Given the record before the Court, it is clear that once the Defendants staff decide that a note or other computer material on these computer systems constitutes a federal record, that material must be saved in a way that includes *all* the pertinent information contained therein. As any paper copies of these materials do not include all of the relevant information, the Defendants record keeping guidance are contrary to law under the FRA and arbitrary and capricious under the APA.

D. THE DEFENDANTS' RECORD KEEPING PROCEDURES ARE ARBITRARY AND CAPRICIOUS BECAUSE THERE IS NO ADEQUATE MANAGEMENT PROGRAM OR SUPERVISION BY RECORD KEEPING PERSONNEL OF THE STAFF'S DETERMINATION OF RECORD OR NON–RECORD STATUS OF COMPUTER MATERIAL.

■ The Court also finds that the Defendants record keeping procedures are arbi-

---

**13.** Because the NARA is administered under the supervision and direction of the Archivist, 44 U.S.C. § 2102, the Court will refer to the NARA and the Archivist interchangeably.

trary and capricious because there is no oversight of the agency staff by the record keeping personnel. The agency staff make the decision in every instance whether computer material is a federal record that must be saved. The Plaintiffs argue that the Defendants' record keeping personnel should at least provide supervision to the agency staff to ensure that federal records are being preserved.

The Court agrees. "Federal agency records management programs must be in compliance with regulations promulgated by ... NARA." 36 C.F.R. § 1220.2. "Each Federal Agency, in providing for effective controls over the maintenance of records, shall: (1) Establish and implement standards and procedures for classifying, indexing and filing records as set forth in GSA and NARA handbooks." The National Archives Records Management Handbook, "Disposition of Federal Records," promulgated by the Archivist, states:

> Within the agency, only records officers should determine the record or non-record status of files. No officials at agency staff or operating levels should be given the authority to do so. Such authority weakens the disposition program by indiscriminate use of the nonrecord label and can result in the loss of valuable records.

Records Management Handbook, Plaintiff's Appendix, Tab 8, at 2–3. Therefore, the Court is convinced that the Defendants are not permitted to allow its staff to make its record keeping decisions under the FRA without some supervision from record keeping personnel. Such a determination is consistent with the written and authoritative guidance of the NARA. It is also consistent with the purpose and history of the FRA.[14]

It is notable that the EOP and NSC perform such supervision and review for paper records but not electronic records.[15] Therefore, while the Defendants' review of paper materials prevents the destruction of misclassified paper files, there is no such safeguard in the case of electronic records. Such a practice is consistent with the Defendants' position that once a paper copy of a computer e-mail is printed out, the computer material is a convenience copy and therefore not a record under the FRA. However, since the Court has determined that computer materials are not simply convenience copies, these computer materials are subject to the FRA and the Archivist and the Defendants must institute immediate provisions for periodic review to ensure the adequacy, effectiveness and efficiency of the record keeping program. *See* 44 U.S.C. §§ 3102, 3105; 36 C.F.R. §§ 1220.54, 1222.10, 1222.20, 122.32, 122.50.

The lack of supervision and review is of particular concern because the NSC instruct their staff that "the most common types of electronic mail notes are non-record materials" and that "non-record materials are notes that relate to official business but do not need to be made a matter of record because of their insignificance or because they are duplicated elsewhere." NSC Memorandum dated May 13, 1992 (Second Menan Declaration, Exhibit 1 and Tab C). This encourages staff to classify materials as non-record, thus exempting them from preservation.

Requiring that records personnel provide supervision in records decisions is also consistent with the level of difficulty in discerning whether the Defendants' computer materials are federal records, presidential records or non-record. Finally and perhaps most importantly, given the FRA's goal of the preservation of records for historical purposes, the Defendants should err, if at all, on the side of preservation.

---

**14.** For this reason and because the Archivist and the agencies have not initiated an enforcement action with the Attorney General to ensure the preservation of these federal records, the Court shall remand this case to Archivist. *See* Section II(G) *infra.*

**15.** At the end of the Reagan Administration, officers of the NSC Information and Policy Directorate reviewed all *paper* files, including all files that employees believed to be personal in nature, to assure that staff members had complied with their record keeping obligations. However, no such review of *electronic* material was performed.

E. THE EOP'S RECORD KEEPING GUIDELINES ARE ARBITRARY AND CAPRICIOUS BECAUSE THE GUIDELINES DO NOT PROVIDE SUFFICIENT GUIDANCE TO DETERMINE WHAT IS A FEDERAL RECORD THAT MUST BE PRESERVED AND THEY ALSO PERMIT THE DESTRUCTION OF FEDERAL RECORDS.

■ The Court finds that the record keeping guidelines provided to the EOP staff at the time this suit was filed in 1989 were arbitrary and capricious.[16]

The written records management guidelines for the components of the EOP using these computer communication systems are contained in the "Federal Records Manual," first issued in 1979.[17] The 1982 edition of the Manual was in use when PROFS first was introduced at the EOP in 1986 and when the Plaintiffs filed this suit.[18] It does not provide a reasonable method of ensuring compliance with the FRA. While it quotes the definition of a federal record contained in the statute, it simply refers to those materials meeting the statutory definition as "records" and does not distinguish between federal and presidential records.[19] It also does not instruct staff on how to go about saving record material in electronic form. For example, after providing a definition of the term record, the 1982 Manual proceeds to discuss a central filing system, without discussing the way that records make their way into such a filing system. Neither does it discuss the format that such record material must or can take when being placed in these files.

In addition, the memoranda issued to the EOP staff during 1988 concerning record management at the close of the Reagan Administration simply reference the Manual and does not clarify or improve the record keeping guidance.[20] Similarly, the oral guidance provided to the EOP staff does not remedy the adequacy of the recordkeeping procedures because it was based on the written guidance. In light of the foregoing, the Court concludes that the EOP's record keeping guidance to the staff, at the time this suit was filed, was not reasonably calculated to achieve the goals of the FRA.

However, the Court finds that the 1989 Manual is a far better presentation of record keeping requirements than the 1982 version and provides better guidance to EOP staff. The 1989 Manual, unlike the 1982 version, differentiates between federal and presidential records and cites the statutory language of both the FRA and the PRA. While the 1989 edition of the Manual defines a federal record in the same language used in the 1982 Manual, it

16. The NSC has a PROFS system for its staff that is maintained separately from other components of the EOP. For this reason, any reference to the EOP is intended to refer only to EOP components other than the NSC, which shall be referred to separately.

17. The Library and Information Services Division ("LISD") within the EOP maintains a records management program for the OA, the Council on Environmental Quality, the Office of Management and Budget, the Office of Science and Technology Policy, Office of the United States Trade Representative and, since 1989, the Office of National Drug Control Policy. LISD issues written guidelines on the retention, management, and disposition of Federal records for these component agencies.

18. The Manual was later updated in 1989, after this suit was filed. The 1982 and 1989 Federal Records Manuals were the exclusive written guidance on recordkeeping for the EOP staff from 1982 through June 1991.

19. This distinction is an important one. Presidential records are "[d]ocumentary materials produced or received by the President, his staff, or units or individuals in the Executive Office of the President the function of which is to advise and assist the President, shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and shall be filed separately." 44 U.S.C. § 2203(b).

Presidential records are stored, and disposed of differently than federal records. *Compare* 44 U.S.C. § 2203 *with* 44 U.S.C. §§ 3301 *et seq.* Finally and perhaps most importantly, federal records are made available to the public through FOIA while presidential records are not. *See* 44 U.S.C. § 2201(2)(B).

20. At the close of the Reagan Administration, a memorandum issued by OA asked the staff to print out "any notes or documents that may be covered under the Presidential Records Act or that may be transferred to the next Administration." Joint Statement of Facts No. 97.

further defines documentary material to include:

> *all media* containing recorded information, regardless of the nature of the medium or the method or circumstances of recording. The related phrase "regardless of physical form or characteristics" means that the medium may be paper, film, disk, or other physical type or form; and that the method of recording may be manual, mechanical, photographic, electronic, or any other combination of these or other technologies.

Anton Dec., Exhibit B, at 5 (emphasis in the original). Therefore, the Court finds that while the 1982 Manual violates the APA, the 1989 Manual does not.[21]

■ However, this does not end the Court's inquiry. The Plaintiffs have also challenged various instructions given to the EOP staff as being contrary to law in violation of the explicit mandate of the FRA. The Court again agrees. In June 1991, the Defendant Office of Administration, a component of the EOP, issued a new directive on its record management program to its staff. The June 1991 directive contains the first and only recordkeeping instruction by the OA explicitly mentioning electronic mail. The Directive states:

> Electronic mail should not be used to convey official records information. If an employee creates or receives an electronic message that contains such information, the message should either be incorporated into a memorandum, or reduced to paper. The electronic mail function is not designed to replace the existing system of document production and retention.

Other EOP components, including the Office of Management and Budget, have adopted this directive and issued similar instructions to their staff.[22] The Court finds that this June 1991 instruction is impermissible under the FRA because it tells staff that they have complied with the FRA simply by incorporating record material into a memorandum. It is unclear from this directive whether such memorandum should be in paper form or on the computer and what steps should be taken to preserve the information incorporated into the memorandum. Such a vague instruction is not reasonably calculated to preserve federal record material and will lead to the destruction of record material, particularly those previously discussed herein on computers which indicate who said what to whom and when.

F. THE NSC'S RECORD KEEPING GUIDELINES AT THE TIME THIS SUIT WAS FILED WERE ARBITRARY AND CAPRICIOUS BECAUSE THE GUIDELINES DID NOT PROVIDE SUFFICIENT GUIDANCE TO DETERMINE WHAT WAS A FEDERAL RECORD THAT MUST BE PRESERVED AND TO DETERMINE THE DIFFERENCE BETWEEN FEDERAL RECORDS, PRESIDENTIAL RECORDS AND NON–RECORD MATERIAL.

■ The Court finds that the record keeping guidelines given to NSC staff at the time this suit was filed was arbitrary and capricious. The FRA's definition of a federal record, contained in 44 U.S.C. § 3301, does not appear in any of the NSC's written record keeping guidance used by its staff.[23] While some memoran-

---

**21.** The Plaintiffs also contend that both the 1982 and 1989 Manuals are unreasonable because they do not instruct the staff to print out in paper form all federal record material contained or created on these computer systems. The Defendants contend that such an instruction is implicit in the Manuals and also has been made explicitly in other memoranda to their staff.

However, since the Court has already held that such an instruction does not satisfy the requirements of the FRA because the paper and the computer versions of these electronic rec-

ords are different, the Court does not need to address this particular issue.

**22.** The 1989 Manual is still the exclusive written guidance on recordkeeping for those EOP components that have not adopted the June 1991 OA Directive.

**23.** From the time PROFS was introduced in 1985 until March 1987, the NSC written guidelines on recordkeeping obligations were contained in the 1984 "National Security Council Administrative Manual." The Manual has a section entitled "Records Management," which states:

da quote parts of the definition, they do not quote the definition in its entirety. At the very least, compliance with the FRA requires that the staff be fully advised of the definition of a federal record. None of the written materials provided to the staff provide this definition.[24]

The Defendants contend that it is unnecessary for NSC staff to be given more detailed instructions because the staff is instructed to save all their records other than personal records for the Secretariat staff to review. However, the record belies this assertion. The guidelines do not instruct staff that all electronic materials, other than personal records, must be saved. In fact, only one memorandum tells the NSC staff to save computer materials that meet the definition of a federal record.[25] Therefore, the NSC guidelines during this time period gave the staff the responsibility of deciding whether electronic material

constituted a federal record even though the staff has not been given the statutory definition. A complete explanation of what constitutes a record under the FRA is necessary.

The oral guidance the NSC provided to its staff during this time did not ensure compliance with the FRA. The oral guidance addressed the record keeping issue in the same manner as the written guidance. While the Defendants claim that the oral guidance might go beyond the written guidance, there is no evidence in this record that this oral guidance uniformly provides substantive guidance complementing the written.

The NSC issued additional instruction to its staff after this action was filed. The Court finds that these guidelines define what constitutes a federal record to its staff.[26] However, they are still arbitrary

All materials received or developed by an employee, detailee, or consultant during his/her tenure with the NSC Staff are official records of either the NSC or the President, and they may not to be removed or destroyed. NSC 1984 Administrative Manual, at 33, Defendants Motion for Summary Judgment, Exhibit A, Tab D. The Manual also states that:

> The following procedures should be followed with regard to all files maintained by each individual: 1. All originals of logged items ... and other NSC institutional documents must be separated and sent to the Secretariat. The originals are Federal records and must be law be included in either the NSC institutional records, which will remain with the NSC, or Presidential records, which will be sent to the National Archives for the President's Library. *Id.*

Finally, the 1984 Manual contains instructions on non-record materials:

> Unclassified, wholly personal items, i.e., not related to White House or NSC business, should be filed separately and may be removed and retained.... The remaining files should be boxed according to established procedures ... and turned over to the Secretariat. *Id.*, at 34.

In addition to the 1984 Manual, various memoranda were given to the staff on the subject of records management before the Plaintiffs filed this suit in January 1989.

**24.** A May, 19, 1988 memorandum requests that the staff begin reviewing their records in "preparation for the eventual transfer of all officials records to a depository at the end of the administration." It states that all presidential and NSC records will be reviewed before the start of

the new administration and that electronic data "will be subject to a similar process of review and disposition." The memorandum goes on to divide files into 3 categories: personal records, presidential records and NSC records and states that personal records must be reviewed by records personnel before their removal. A memorandum dated November 11, 1988 restates the information contained in this May memorandum.

**25.** A memorandum dated December 20, 1988 reminds staff of its responsibilities under the FRA. It states that the FRA "requires the creation of records reflecting the 'organization, functions, policies, decisions, procedures and essential transactions' of an agency." It states that

> Consistent with longstanding NSC policy and practice, information meeting the definition of a federal or presidential record is required to be formally entered into the Secretariat's record systems and may not be maintained solely be staff in convenience files or in electronic mail or other computer files.

The memorandum also states:

> I ask that you review your computer files prior to your departure or January 20, 1989, whichever comes first. Should you identify therein any federal or presidential record as defined above, that you believe is not contained in the Secretariat systems, please forward it in hard copy....

**26.** On March 20, 1989, a memorandum was issued to the NSC staff on "Presidential Records and NSC Agency Records." The memorandum quotes the statutory definition of a federal record and presidential records.

and capricious because the staff are told that electronic mail does not constitute record material and need not be saved once a paper copy has been printed out. *See* Section II(B) *supra.*[27] Moreover, the record keeping personnel do not exercise adequate supervision over the staff's determination of what constitutes a federal record. *See* Section II(D) *supra.*[28] While the NSC's practice of requiring departing employees to attest that they have complied with record keeping laws may be a good practice, it does not aid the staff in their day-to-day determinations of record keeping status.[29]

█ The Plaintiffs also contend that the NSC's record keeping guidance is contrary to law because it instructs the staff to save certain material as presidential records when, in fact, they are federal records.[30] The Plaintiffs argue that, under the "sole function" test announced in *Soucie v. David*, 448 F.2d 1067 (D.C.Cir.1971), the NSC is an agency and therefore, all records made or received by its staff whether they are used to assist the President or perform the statutory functions of the NSC, are federal records subject to the FOIA, exempt from the PRA and covered by the

FRA.[31] Therefore, the Plaintiffs contend that the NSC cannot designate certain records as presidential simply because the staff member was advising the President. *See Ryan v. Department of Justice*, 617 F.2d 781, 788 (D.C.Cir.1980).

The Court disagrees. The clear language of the PRA and the history of this lawsuit clearly demonstrate that the NSC is entitled to segregate presidential and federal records. The clear language of the PRA provides that EOP components, which include the NSC, produce presidential records:

> "[d]ocumentary materials produced or received by the President, his staff, or units or individuals in the Executive Office of the President the function of which is to advise and assist the President, shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and shall be filed separately."

44 U.S.C. § 2203(b). Furthermore, our Circuit Court explicitly stated that, because the NSC advises the President and has statutory obligations, the NSC produces

---

This memorandum, along with other materials, are still distributed to new employees and used by NSC staff as the official record keeping guidelines of the agency.

**27.** For example, a March 18, 1989, memorandum to the NSC staff on "Use of Electronic Mail" states:

> Electronic mail *should not* be used to convey substantive information about policy issues when such information is not already contained or will not otherwise be contained in a written federal or presidential record.......
> As stated in [the] memorandum of January 25, 1989, information meeting the definition of a federal or presidential record *should not* be maintained solely in electronic mail files.

**28.** For example, on May 18, 1992, the NSC installed a new program for electronic mail on the PROFS and A–1 systems. The program requires that when a user creates an electronic mail note, he or she must enter a code identifying the note as a presidential record, a federal record, or non-record material. The computer automatically routes copies of notes identified as Presidential or Federal records to Records Management for entry into NSC's records system. Significantly, if a user identifies a note as non-record material, it is not copied or routed to Records Management.

**29.** Since February, *1990*, departing NSC employees have been required to sign a certificate attesting:

> I have reviewed my computer memory files, including my electronic mail files, and have forwarded to the Secretariat any materials containing information that constituted a Presidential record or an agency record which was not otherwise recorded in a presidential or agency record.... All material remaining in my computer memory files, including my electronic mail file, constitutes non-record material, or information already recorded in another record, and can be deleted.

**30.** In the Plaintiffs' view, the NSC does not produce presidential records. *See* Plaintiffs' Opposition to the Defendants' Motion for Summary Judgment, July 6, 1992, at 45–52. The Plaintiffs argue that because the NSC is an agency for purposes of the FOIA, it produces agency records and not presidential records. *Soucie v. David*, 448 F.2d 1067 (D.C.Cir.1971) (depending on its general nature and functions, a particular unit is either an agency or it is not).

**31.** The Plaintiffs note that the PRA specifies that it does not cover official records of an agency that fall under FOIA. 44 U.S.C. § 2201(2)(B).

both presidential and federal records. *Armstrong v. Bush*, 924 F.2d 282, 284 n. 2 (D.C.Cir.1991). Our Circuit Court also held that the PRA precludes judicial review and this Court has no power to review actions taken by the President to ensure that presidential records are maintained. *Id.* at 289–90; *see* 44 U.S.C. § 2203.

This Court stated that the question of how the NSC classified presidential records was not before the Court because the PRA precludes judicial review of the President's recordkeeping practices and decision, which includes the guidelines used in keeping Presidential records. *Armstrong v. Bush*, 139 F.R.D. 547, 551 (D.D.C.1991).

## G. THE COURT SHALL REMAND THIS CASE TO THE ARCHIVIST FOR IMMEDIATE REMEDIAL ACTION UNDER THE FRA TO PREVENT THE DESTRUCTION OF FEDERAL RECORDS.

 The duty of the Archivist and the defendant agency heads to prevent the destruction of federal records has been violated in this case with the result that the Court is compelled to grant the Plaintiffs a declaratory judgment to that effect. The Court finds that the Archivist has breached his statutory duty to prevent the destruction of federal records. The Archivist responsibilities are triggered once an unlawful destruction of federal records has or will likely occur. *See* 44 U.S.C. § 2905(a); *Armstrong v. Bush*, 924 F.2d 282, 295.[32] Injunctive relief under § 706(1) of the APA is appropriate where a reviewing court con-

cludes that the "defendant official has failed to discharge a duty that Congress intended him to perform." *Covelo Indian Community v. Watt*, 551 F.Supp. 366 (D.D.C.1982) (citations omitted); *see Environmental Defense Fund, Inc. v. Castle*, 657 F.2d 275 (D.C.Cir.1981).

It is not the Court's place to instruct the Defendants on exactly what procedures must be followed to comply with the FRA.[33] Instead, the FRA requires that, where actual, impending unlawful removal or destruction of records in the custody of an agency comes to the attention of the Archivist, the Archivist shall notify the head of the agency and:

> assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law. In any case in which the head of the agency does not initiate action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and notify the Congress when such a request has been made.

44 U.S.C. § 2905; *see Armstrong v. Bush*, 924 F.2d at 294–296.[34] Therefore, the Court shall remand this case to the agencies and the Archivist for appropriate and immediate action to preserve these electronic federal records consistent with this opinion.

---

**32.** The Archivist shall notify the agency head of "any actual, impending or *threatened* unlawful removal ... or destruction of records ... that shall come to his attention...." 44 U.S.C. § 2905(a) (emphasis added).

**33.** The Supreme Court has held that there is no implied right of action for private litigants under the FRA. *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). However, our Court of Appeals concluded that "it would not be inconsistent with *Kissinger* and the FRA to permit judicial review of the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General." *Armstrong*, 924 F.2d 282, 295. This is why the Court today will remand this case to the Archi-

vist who shall notify the Attorney General and the Congress.

**34.** The 1984 amendments to the FRA strengthened the administrative enforcement mechanism to prevent the unlawful removal or destruction of records by requiring the Archivist to notify Congress and independently request that the Attorney General initiate an action if the agency refused to do so. H.R.Conf.Rep. No. 98–1124, 98th Cong.2d Sess. 28 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3865, 3894, 3903. Congress enhanced the administrative enforcement mechanism because "of the frequency of incidents of removal or destruction of records in recent years." *Id.* at 28, 1984 U.S.Code Cong. & Admin.News 3903.

■ As the Defendants record keeping procedures violate the FRA, the Defendants are enjoined from removing, deleting or altering their electronic records systems until such time as the Archivists takes action pursuant to Section 2905 of the FRA to prevent the destruction of federal records, including those records saved on backup tapes pursuant to the two Temporary Restraining Orders entered in this case. *See* footnote 4.

## H. THIS COURT HAS JURISDICTION TO ORDER THE PRESERVATION OF THE DEFENDANTS' ELECTRONIC RECORDS UNTIL THE ARCHIVIST CAN TAKE APPROPRIATE ACTION REQUIRED BY II(G) ABOVE. HOWEVER, THE COURT CANNOT ORDER THE PRESERVATION OF RECORDS CREATED BY EOP COMPONENTS WHOSE SOLE RESPONSIBILITY IS TO ADVISE THE PRESIDENT BECAUSE THERE IS NO JUDICIAL REVIEW OF THE PRA.

■ The Court is limited by the Court of Appeals decision in framing the scope of relief in this case. *See Armstrong*, 924 F.2d 282 (D.C.Cir.1991). The Circuit Court, while providing for judicial review under the FRA, expressly held that there was no review under the PRA. *Id.* at 289. This distinction is an important one for, while the Court has power to review the record-keeping guidance of federal agencies under the FRA, it can not delve into record management practices under the PRA.

The Circuit also provided the methodology for separating the FRA and the PRA as it applies here: The Circuit noted that EOP components whose sole responsibility is to advise the President are subject to the PRA and create presidential records. *Armstrong*, 924 F.2d at 286 n. 2. Similarly, the components of the EOP that have statutory responsibility are subject to the FRA. *Id.* Thus the Order of the Court today only applies to agencies that have statutory responsibility and not those that solely advise the President.

The parties have disputed the scope of this Court's Temporary Restraining Order. *See* Defendants' Statement to the Court dated December 8, 1992; Plaintiffs' Response dated December 10, 1992. The parties disagree as to whether the electronic material produced by various components of the EOP are federal or presidential records. Under the Court of Appeals mandate, this Court has no power to review compliance with the PRA, and thus, no power to review the record keeping procedures of EOP components whose "sole responsibility is to advise the President." *Armstrong* 924 F.2d at 286 n. 2. It was for this reason that the Court exempted such components, containing only presidential records, from the Temporary Restraining Order requiring the preservation of electronic records. *See* Order dated November 23, 1992.

In the court's decision today on the merits of the Plaintiffs' FRA claims, the same logic applies. The Defendants shall not be required to preserve material which are presidential records produced by components of the EOP whose sole responsibility is to advise the President. However, in components that produce both types of records, this Court does have jurisdiction to authorize the preservation of these materials until the Archivist can ensure that federal records are not destroyed. Once again, the Defendants must err on the side of preservation.

## III. CONCLUSION

The Court finds that the EOP and NSC have violated the Federal Records Act and that their record keeping practices are arbitrary and capricious under the Administrative Procedures Act. The Court also finds that the United States Archivist has failed to fulfill his statutory duties under the Federal Records Act. The Court will remand this case to the Archivist to take immediate action with the assistance of the Attorney General pursuant to the FRA with notice to Congress to take all necessary steps to preserve the electronic federal records here in question.

**350**

The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## ORDER

Upon consideration of all the papers filed in this case, the applicable law, the oral arguments of counsel, and pursuant to and for the reasons set forth in the Opinion of the Court, issued of even date herewith, it is, by the Court, this 6th day of January, 1993,

ORDERED, that the Plaintiff shall have a Declaratory Judgment that the guidelines issued by and at the direction of the Defendant Agencies are inadequate and not reasonable and are arbitrary and capricious and contrary to law in that they permit the destruction of records contrary to the Federal Records Act; and it is

FURTHER ORDERED, that the Defendant Archivist shall immediately, upon receipt of today's opinion and this Order, seek the assistance of the Attorney General with notice to Congress, and take all necessary steps to preserve, without erasure, all electronic Federal Records generated at the defendant Agencies to date, except purely Presidential Records; and it is

FURTHER ORDERED, that the parties shall process the pending Freedom of Information Act claim administratively, with all deliberate speed, and advise the Court at the earliest practicable date of when that phase of this case may be made ripe for Judicial resolution.