**Scott ARMSTRONG, et al., Plaintiffs,**

v.

**EXECUTIVE OFFICE OF
The PRESIDENT, et
al., Defendants.**

**Civ. A. No. 89–142 (CRR).**

United States District Court,
District of Columbia.

May 21, 1993.

As Amended June 9, 1993.

Michael E. Tankersley, Public Citizen Litigation Group, with David C. Vladeck, Public Citizen Litigation Group, Washington, DC were on the briefs, for plaintiffs.

David J. Anderson, Atty. U.S. Dept. of Justice, Civ. Div., Washington, DC, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., J. Ramsey Johnson, U.S. Atty. for the District of Columbia, and Elizabeth A. Pugh, Jason R. Baron, Anthony J. Coppolino, Peter D. Coffman, and Pamela A. Moreau, U.S. Dept. of Justice, Civ. Div. Washington, DC, were on the briefs, for defendants.

### OPINION

CHARLES R. RICHEY, District Judge.

### I. *INTRODUCTION*

Before the Court are the Defendants' and the Plaintiffs' responses to this Court's Order of April 6, 1993, where this Court ordered the Defendants to show cause as to whether they should be held in civil contempt for their failure to comply with this Court's Orders of January 6 and 11, 1993. The Court held a hearing on this matter on May 17, 1993.

After careful consideration of the parties' submissions, the arguments of counsel, the record in the case and the underlying law, the Court finds that the Defendants are in contempt of this Court's Orders of January 6 and 11, 1993, because they have failed to promulgate new, appropriate, and proper guidelines for the preservation of electronic federal records under the Federal Records Act and because the Defendants have damaged some of the backup tapes which store the electronic federal records that this Court has ordered to be preserved. The following shall constitute this Court's findings of fact and conclusions of law.

## II. BACKGROUND

The Plaintiffs brought this suit alleging that the Executive Office of the President ("EOP"), the National Security Council ("NSC"), and the Archivist of the United States,[1] *inter alia,* were violating the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101–2118, 2901–2910, 3101–3107, and 3301–3324, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* More specifically, the Plaintiffs alleged that the record-keeping practices of the Defendant federal agencies violated the FRA and were arbitrary and capricious under the APA. Furthermore, the Plaintiffs alleged that the Archivist of the United States failed to fulfill his statutory duties under the FRA.[2]

On January 6 and 11, 1993,[3] this Court granted the Plaintiff Summary Judgment as to Counts II and III of their Third Amended Complaint and held, *inter alia,* that the guidelines issued by and at the direction of the Defendant Agencies were arbitrary and capricious and contrary to law because, *inter alia,* they permitted the destruction of records contrary to the FRA. In its January 6 and 11, 1993 Orders, the Court granted the Plaintiffs declaratory and injunctive relief and required the Defendants to take all necessary steps to preserve, without erasure, all electronic federal records generated by the Defendant Agencies pursuant to the Orders of this Court, and the stipulations and representations of the parties. *Armstrong v. Executive Office of the President,* 810 F.Supp. 335 (D.D.C.1993).

The question before the Court is whether the Defendants have taken appropriate and proper action to comply with the Orders of this Court. The Court finds that the Defendants have failed to promulgate new guidelines under the FRA to replace those struck down over four months ago by this Court. Furthermore, the Court finds that the Defendants have damaged the backup tapes which stores electronic federal records that this Court has ordered to be preserved for the duration of this lawsuit. Thus, the Defendants have violated the spirit and letter of this Court's Orders pursuant to the FRA and the APA that require them to preserve the valuable historical information that is stored on these backup tapes.

## III. THIS COURT HAS JURISDICTION IN THIS CASE TO ISSUE AN ORDER OF CONTEMPT TO ENFORCE ITS ORDERS.

■ It is an established principle of law that once a court issues an injunction, those persons subject to it must obey the terms of the Order as long as the injunction remains in effect. *See SEC v. Diversified Growth Corp.,* 595 F.Supp. 1159, 1170 (D.D.C.1984) (it is within the court's civil contempt power to coerce obedience to a lawful Order). A court has the inherent power to enforce compliance of an injunction through civil contempt. *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 632, 107 L.Ed.2d 644 (1990); *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Where an injunction imposes a "duty to obey specified provisions of [a] statute," failure to abide by the injunction constitutes contempt. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191–92, 69 S.Ct. 497, 499–500, 93 L.Ed. 599 (1949).

■ Civil contempt is a remedial sanction used to obtain compliance with a Court Order or to compensate for damage sustained as a result of noncompliance. *NLRB v. Blevins Popcorn, Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981). A civil contempt proceeding is a three stage process: 1) a court must issue an Order directing a party to take or not take certain action; 2) following disobedience of that Order, the court must issue a conditional Order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant

---

1. The Archivist is head of the National Archives and Records Administration ("NARA"), 44 U.S.C. § 2102.

2. The Plaintiffs also alleged in Count I of their Complaint that they are entitled to certain information stored on computer tapes under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The Court has not yet addressed this FOIA claim.

3. The Court issued its original Opinion and Order on January 6, 1993. On January 11, it granted the Plaintiffs' motion to amend the January 6, 1993 Order to clarify the scope of the Defendants' responsibilities.

party complies with prescribed conditions set forth in a "purgation Order;" and 3) execution of the threatened penalty if the conditions are not fulfilled. *NLRB v. Blevins Popcorn, Co.,* 659 F.2d 1173 (D.C.Cir.1981). In a proceeding for civil contempt, the moving party has the burden of proving by clear and convincing evidence that the alleged contemptor has violated the court's Order. *Id.* at 1183.

In requesting an Order of contempt, the Plaintiffs have made several specific allegations regarding the Defendants' violations of this Court's Orders. The Court shall address each of these allegations separately.

## IV. THE DEFENDANTS ARE IN CIVIL CONTEMPT FOR FAILING TO PROMULGATE NEW REGULATIONS FOR THE PRESERVATION OF ELECTRONIC FEDERAL RECORDS.

The Plaintiffs allege that the Defendants have not implemented proper procedures to identify and preserve electronic federal records on their electronic communications systems. The Court agrees with the Plaintiffs and finds that the Defendants have failed to comply with this Court's Orders. More specifically, the Court finds that the Defendants have not substantially complied with this Court's Orders because they have failed to issue appropriate and proper new guidelines for the preservation of electronic federal records to replace those struck down by this Court.

### A. THE COURT'S OPINIONS AND ORDERS IN THIS CASE, AS WELL AS THE DEFENDANTS' OWN CORRESPONDENCE, CLEARLY SHOW THAT THE DEFENDANTS ARE REQUIRED TO PROMULGATE NEW GUIDELINES FOR THE PRESERVATION OF ELECTRONIC FEDERAL RECORDS.

■ The Defendants have been on notice since the beginning of this lawsuit in 1989, some four years ago, that they might be obligated to preserve materials on their electronic communications systems pursuant to the FRA, and have been aware since then that they might be required to develop new and proper regulations in that regard. In addition, on January 6 and 11, 1993, this Court specifically held that:

> the guidelines issued by and at the direction of the Defendant agencies are inadequate and not reasonable and are arbitrary and capricious and contrary to law in that they permit the destruction of records contrary to the Federal Records Act.

*Armstrong v. Executive Office of the President,* 810 F.Supp. 335, 350 (D.D.C.1993). By striking down the Defendants' guidelines as inadequate and ordering the preservation of all electronic records, the Court has made it clear that the Defendants are required, under the FRA, to promulgate appropriate and proper new guidelines.

Moreover, the Defendants requested a stay of this Court's Orders pending appeal, which was denied. *Armstrong v. Executive Office of the President,* No. 89–142, slip op. (D.D.C. January 14, 1993) (Order denying the Defendants' Motion for a stay Pending Appeal). Therefore, the Defendants are still bound by this Court's Orders of January 6 and 11, 1993. In denying the Motion for a Stay, this Court was careful to point out that the Defendants must not delete materials on their electronic communication systems "until the Archivist and the Defendant agencies develop proper guidelines so as to comply with the law." *Id.* slip op. at 3.

Furthermore, Chief Judge Mikva and Judges Sentelle and Williams of the United States Court of Appeals for the District of Columbia also refused to stay this Court's Orders pending appeal.[4] Therefore, under these circumstances, the Court concludes

---

4. The Court of Appeals granted the Defendants' Motion for a Stay pending appeal only:

> insofar as [the district court's orders] enjoin[ ] defendants from 'removing, deleting, or altering information on their electronic communications systems.' Amended Order at 1–2. Defendants may remove, delete, or alter such information as they see fit, so long as the information is preserved in identical form, pending the disposition of this appeal.

*Armstrong v. Bush,* No. 93–5002, slip op. at 1 (D.C.Cir. Jan. 15, 1993) (order granting in part

that its Orders were specific enough to " 'create a predicate for contempt,' " *NAACP, Jefferson County Branch v. Brock*, 619 F.Supp. 846, 849 (D.D.C.1985) (*quoting Aero Corp. v. Department of the Navy*, 558 F.Supp. 404, 418 (D.D.C.1983)), because the terms of the Orders clearly spelled out what actions the Defendants were enjoined from taking and what actions the Defendants were required to take. *See id.*

In addition, the Defendants' own correspondence and submissions to this Court confirm that they are aware of their responsibility to promulgate new guidelines. For example, James W. Moore, the Assistant Archivist for Records Administration, wrote that:

> [t]he Court's orders in the Armstrong case contemplate that, while interim guidance on electronic records is in place, components of the Executive Office of the President will work with the National Archives and Records Administration to develop further guidance in conformance with the requirements of the court's order.

Letter from James W. Moore, dated May 7, 1993, Exhibit 22A, Defendants' Supplemental Exhibits, filed on May 12, 1993.

However, the Defendants claim that they had in place the means to comply with this Court's Orders before the Orders were issued because they had been saving onto backup tapes all electronic communications that might contain federal records. The Defendants claim that by preserving all the electronic communications material on tape, they are preserving the status quo in this action along with all of the Plaintiffs' rights to this material and thus satisfying this Court's Orders. However, such a claim is misplaced. It ignores the fact that the Defendants are required by this Court's Orders to promulgate *new* guidelines for the preservation of electronic computer records.

and denying in part the defendant appellants' emergency motion for stay pending appeal).

Thus, the Court of Appeals has left undisturbed this Court's finding that the Defendants' recordkeeping guidelines are arbitrary and capricious and the accompanying mandate that the Defendants promulgate appropriate and proper guidelines for the preservation of electronic federal records.

## B. THE RECORDKEEPING INSTRUCTIONS ISSUED BY THE DEFENDANTS DO NOT FULFILL THE REQUIREMENTS OF THIS COURT'S ORDER.

▆▆▆ Once a predicate for contempt has been established, a court must consider whether a party can be held in civil contempt in light of the evidence before it and any mitigating factors. *NAACP, Jefferson County Branch v. Brock*, 619 F.Supp. 846, 849 (D.D.C.1985). A violation need not be willful or intentional because the intent of the party is irrelevant in a civil contempt proceeding. *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C.Cir.1981). This Circuit has considered good faith compliance efforts or a party's inability to comply with a court's Orders as defenses which call for mitigation of contempt sanctions. *See NAACP, Jefferson County Branch v. Brock*, 619 F.Supp. 846 (D.D.C.1985).

▆▆▆ The Defendants contend they have demonstrated "substantial compliance with the orders of this Court" by promulgating some new instructions regarding the management and preservation of electronic federal records. Defendants' Proposed Findings of Fact and Conclusions of Law, filed May 12, 1993, at 27–28, 35. They also contend that they are not in contempt because "no clear deadlines were imposed by the Court for compliance." Defendants' Memorandum in Opposition to the Plaintiffs' Motions, filed April 19, 1993, at 59.

The Court does not agree. The three new sets of instructions to which the Defendants refer do not support their claim that they have "substantially" complied with this Court's Orders. None of these instructions were issued to the staff at the Defendant agencies.[5] **Moreover, the Court is particu-**

5. The three sets of instructions that the Defendants rely on are memoranda between the NARA and the EOP or NSC. The cover letter from the NARA accompanying two of these instructions explicitly states that "[t]he attached guidance is *not* intended for direct circulation to EOP staff but, rather, is being provided to you in anticipation that we will work with you to develop more specific staff guidelines on electronic communications for each EOP component." Letters from

larly skeptical of the Defendants' efforts to comply because the three sets of record-keeping instructions referred to were all issued by the Defendants after the Plaintiffs requested that the Defendants be held in contempt.[6] *See Glover v. Johnson,* 934 F.2d 703, 708 (6th Cir.1991).[7]

In addition, the Defendants themselves admit that they have failed to issue new guidelines to replace those guidelines struck down by this Court. *See* Letter from James W. Moore, dated May 7, 1993, Exhibit 22A of the Defendants' Supplemental Exhibits, filed on May 12, 1993.[8] In fact, the record before this Court shows that only one set of new instructions were provided to EOP and NSC staff. However, these "new guidelines" consist of *less than one page of text.* The guidelines provided to the EOP and NSC staff state simply that:

> **Records generated electronically must be incorporated into an official record-keeping system. Thus no word processing or e-mail document that is a federal record should be deleted unless it has been (a) printed and placed in an appropriate file, or (b) preserved in an appropriate electronic system.**

Plaintiffs' Show Cause Motion, Exhibit 64. The guidelines go on to state that:

> **Pursuant to [court] orders, and until further instructions from the Counsel's office, the following special rules should be observed by components of the EOP that generate federal records:**
>
> **1. Material may not be deleted from any e-mail file unless (a) the material has been retained in full on a back-up tape or other comparable medium, and**

James W. Moore, Assistant Archivist, Exhibit 22A and 22B, Defendants' Supplemental Exhibits in Opposition, filed on May 12, 1993.

**6.** The Plaintiffs filed their Motion for an Order to Show Cause as to whether the Defendants should not be held in contempt on April 1, 1993. The instructions referred to by the Defendants were issued on April 12, May 7, and May 12, 1993. Defendants' Proposed Findings of Fact and Conclusions of Law, filed May 12, 1993, at 27–28, 35.

**7.** The Court in *Glover* found that the facts did not support the defendants' contention that they had diligently tried to comply with the Court's orders. The Court noted that the defendants actions in

> **(b) the retained version includes full text and all available transmittal information; and**
>
> **2. EOP staff member with records management responsibility must monitor the implementation of guidance on federal records (including the status of records) to ensure consistent application of the court's order.**

*Id.* The Plaintiffs argue, and the Court agrees, that this guidance falls short of what is required by this Court's Orders.

Pursuant to Orders and stipulations in this case, the Defendants have been storing information from their electronic communications systems onto backup tapes for some time. The backup tapes are designed to preserve the information from the electronic communication systems and to ensure that any federal records on these systems are preserved pending the resolution of this lawsuit. Similarly, the interim guidance issued on May 7 and 8, 1993 to EOP and NSC staff ensures that all the information created on the electronic communication systems at the Defendant agencies will also be preserved on backup tapes.

However, the interim guidance does not fully comply with the statutory command of the FRA and the Orders of the Court. This interim guidance makes no effort to separate federal records from other material or to integrate the Defendants' electronic recordkeeping systems and their recordkeeping guidance. Thus, this interim guidance is incomplete and does not absolve the Defendants of their responsibility to promulgate appropriate and proper guidelines to replace those struck down by this Court.[9]

complying "displayed an evident sense of nonurgency bordering on indifference, contrasting vividly with the spurt of activity on the heals of the plaintiffs' motion for a finding of contempt." *Glover,* 934 F.2d at 708.

**8.** The Defendants also admitted at the hearing that they had not put together a new set of guidelines and procedures to replace those struck down by this Court.

**9.** In addition, the first part of these interim instructions does not, by its plain language, comport with this Court's Orders. The first part of these instructions provides that a federal record should not be deleted unless it has been printed

■ Therefore, the undisputed evidence before this Court shows that, despite the passage of over four months time since this Court's Orders, the Defendants still have not put together appropriate and proper new guidelines for their staff designed to preserve electronic federal records. *See* 44 U.S.C. §§ 3102, 3105, 2904. In light of these circumstances, it cannot be said that the Defendants have taken " 'all reasonable steps within their power to insure compliance' with the Court's Orders." *Stone v. City and County of San Francisco,* 968 F.d 850, 856 (9th Cir.1992); *see Peppers v. Barry,* 873 F.2d 967, 969 (6th Cir.1989); *Glover v. Johnson,* 934 F.2d 703, 708 (6th Cir.1991) (upholding a finding of contempt where the defendants "neglected to marshall their own resources, assert their high authority, and demand the results needed from subordinate persons and agencies in order to effectuate the course of action required.")

Therefore, the Court finds that the Plaintiffs have proved by clear and convincing evidence that the Defendants are in civil contempt for their failure to promulgate new appropriate and proper regulation for the preservation of electronic federal records. The Court shall order the Defendant agencies to promulgate new guidelines by June 21, 1993 or they shall be subject to sanctions.

The Court is very concerned with respect to the delay in complying with its Orders, and is considering the possibility of appointing a Special Master, pursuant to Federal Rule of Civil Procedure 53, to oversee the task of developing new and proper regulations to carry out not only this Court's Orders but for the purposes of complying with

the FRA in order that the valuable lessons of our recent history will not be lost.

## V. *THE MERE FACT THAT THE DEFENDANTS TRANSFERRED THE BACKUP TAPES TO THE ARCHIVIST DOES NOT CONSTITUTE CONTEMPT OF THIS COURT'S ORDERS. HOWEVER, THE DEFENDANTS ARE IN CONTEMPT OF THIS COURT'S ORDERS BECAUSE THE TRANSFER HAS ADVERSELY AFFECTED THE CONDITION OF THE TAPES AND THE FEDERAL RECORD INFORMATION STORED ON THEM.*

■ Throughout this lawsuit, the backup tapes that have been created by the Defendant agencies have also been stored by the individual Defendant agencies who created the tapes. On January 19, 1993, the Defendant agencies transferred approximately 5,839 of these backup tapes to the Archivist.[10] *See* Archives General Plan for Preservation at 2, Defendants' Exhibit 19A, filed April 19, 1993. The Court finds that the transfer has damaged some of the backup tapes and has impaired the Defendants' ability to preserve the information on these tapes. Therefore, the Court finds that the Defendants are in contempt because they have violated this Court's Orders that require these backup tapes to be preserved.

The Court notes that the Plaintiffs are historians seeking to preserve the documentary history of the United States. It has already been shown that backup tapes in this lawsuit contain valuable historical information. In addition to previously being used during the Iran–Contra investigations, these

out or preserved on an appropriate electronic system. However, as this Court's January 6, 1993 Opinion and Order made clear, instructing staff to print out electronic federal records in paper form does not satisfy the requirements of the FRA because often the paper copy does not contain all the information contained in these electronic records. *Armstrong v. Executive Office of the President,* 810 F.Supp. 335, 841–42 (D.D.C. 1993). In other words, the paper copies do not show who knew what and when they knew it. *Id.*

The second part of these instructions, which provides that material may not be deleted from the electronic communication system unless it

has been retained in full elsewhere and the retained version includes all transmittal information is consistent with this Court's Orders and the partial stay granted by our Court of Appeals because it ensures that any electronic federal record, and all the information contained therein, will be preserved. While the second part of these instructions are not contrary to this Court's Orders, they do not fulfill the Defendants' obligation to promulgate new appropriate and proper guidelines to replace those struck down by this Court.

10. This transfer occurred from 10:30 p.m. on January 19, 1993 until 5 p.m. the next day.

tapes have just recently been subpoenaed by Independent counsel Joseph E. diGenova for his investigation of a preelection search of State Department documents for information on President Clinton. Exhibit 9, Defendants' Exhibits in Opposition, filed April 19, 1993. Therefore, it is clear that by failing to preserve these tapes, the Defendants are failing to preserve history and the lessons to be learned from it.

### A. THERE IS NO LEGAL PROHIBITION PREVENTING THE TRANSFER OF THESE BACKUP TAPES TO THE ARCHIVIST AS LONG AS THE TRANSFER DOES NOT DAMAGE THE FEDERAL RECORD MATERIAL ON THESE TAPES AND ADVERSELY AFFECT THE PLAINTIFFS' RIGHTS.

These backup tapes were transferred to the Archivist pursuant to an agreement between the Archivist, President Bush, the NSC, and the EOP's Office of Administration ("the Agreement"). Defendants' Proposed Findings of Fact and conclusions of Law, filed May 12, 1993, at 13–14. The Agreement provides that former President Bush retains exclusive "legal control" over all presidential information on the backup tapes transferred to the Archivist. Memorandum of Agreement at 2, Plaintiffs' Exhibit 24, filed April 1, 1993. The Agreement also provides that the Archivist segregate all presidential from non-presidential information on the tapes before providing another party access to any non-presidential information contained on the tapes. *Id.*

The Defendants maintain that the transfer conducted pursuant to the Agreement is consistent with former President Bush's legal right to exclusive legal custody of any presidential records stored on these tapes.[11] The Plaintiffs complain that the transfer to the Archivist is a contempt of this Court's Orders because it illegally limits access to the tapes in the Archivist's possession.

Unfortunately, our Court of Appeals has held that there is no judicial review of the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201 *et seq.* *See Armstrong v. Bush,* 924 F.2d 282, 288–89 (D.C.Cir.1991). Therefore, the Court has no authority to address the fate of records created pursuant to that statute or any arrangements made for the maintenance or custody of such presidential records. If the transferred tapes at issue here contained only presidential records, this Court might have no jurisdiction to address the legality of this transfer.

However, it is undisputed that these tapes contain both presidential and federal records. Defendants' Findings of Fact and Conclusions of Law, filed May 12, 1993, at 13. Furthermore, these tapes were created, and continue to be created, in order to save electronic federal records pursuant to the Orders of this Court and the Stipulations entered into by the parties. Thus, under this set of circumstances, there is no legal prohibition preventing this transfer of tapes to preserve President Bush's rights to presidential material so long as the transfer does not damage the federal record material on these tapes and adversely affect the Plaintiffs' rights. Of course, notwithstanding any agreements by the Archivist with former President Bush, the tapes preserved as a result of this lawsuit should not be transferred to the custody of a third party who is not subject to this suit until such time as the FRA claims in this lawsuit are resolved and the pending investigation of the Independent counsel has been completed. In addition, such an agreement also does not provide a defense to undue delay in segregating federal and presidential materials on these tapes or further delaying the resolution of this already protracted lawsuit.[12]

**11.** The Court notes that the Agreement defines "presidential materials" as:

information, contained on the materials, that was created or received by the President, any individual or unit in the Executive Office of the President (including but not limited to, all staff of the White House Office and the Office of Policy Development) whose sole function is to advise and assist the President, and/or the NSC staff in their functions as advisors and assistant to the President.

*Id.* at 5. This definition is consistent with that of a presidential record under the Presidential Records Act, 44 U.S.C. §§ 2201 *et seq.*

**12.** In their oral argument before this Court, the Plaintiffs argued that this transfer violates stipu-

## B. THE COURT FINDS THE DEFENDANTS IN CONTEMPT BECAUSE THE TRANSFER OF THE TAPES TO THE ARCHIVIST HAS JEOPARDIZED THE FEDERAL RECORD MATERIAL CONTAINED THEREIN.

While the transfer, per se, does not run afoul of this Court's Orders, the Court finds the Defendants in contempt of this Court's Orders because the method of transferring of these tapes has adversely affected the condition of the tapes and the information stored on them. As such, the Defendants' actions are contrary to this Court's Orders to preserve the tapes and federal records contained on them.

### 1. This Court's Orders clearly required the Defendants to preserve the electronic federal record material that is stored on the backup tapes in the custody of the Archivist.

This Court's Orders clearly required the Defendants to "preserve, without erasure, all electronic federal records generated at the defendant agencies" and "to prevent the destruction of federal records, including those records saved on backup tapes." *Armstrong v. Executive Office of the President*, No. 89–142, Amended Order at 1–2 (D.D.C. January 11, 1993).

However, at the same time that the Defendants contend that they are complying with this Court's Orders by producing such backup tapes, they are also acting in a way to jeopardize the information on those tapes.

### 2. The record shows that as many as 300 of these tapes must be copied immediately in order to ensure their preservation but that the Defendants have no immediate plans to copy them.

The medium on which these tapes are recorded is very sensitive and certain measures must be taken to safeguard that information on the tapes is preserved. *See* 36 C.F.R. § 1228.188(a) ("Computer magnetic tape is a fragile medium, highly susceptible to the generation of error by improper care and handling."). For example, the average life span of one of these tapes is ten years and, therefore, care must be taken to copy tapes before they become too old. The record here shows that as many as 300 tapes may require immediate copying because they have either exceeded their life span or there are other indications that they have deteriorated. Deposition of Kenneth Thibodeau at 88:5–89:1, Plaintiffs' Reply, Exhibit 59, filed May 12, 1993. However, the Archivist has taken no action to begin such preservation copying nor is there any immediate plan to do so. *Id.* at 52:5–53:15.[13]

### 3. The record shows that a number of these tapes have been physically damaged but the Defendants have no immediate plans to repair these tapes.

The record before the Court shows that a number of these tapes were physically damaged in the process of being moved to the Archives.[14] *Id.* at 43:9–44:8. While the De-

---

lations in this case in which the parties agreed that certain backup tapes would be preserved by the Defendant agencies. *See* Plaintiffs' Exhibit 36, 37. However, the Court is not persuaded that any of the prior stipulations of this Court prohibit this transfer. These orders and stipulations were designed to preserve electronic federal records on backup tapes pending a decision by this Court on the Plaintiffs' FRA claim in this case. In its Opinion and Orders of January 6 and 11, 1993, the Court acted to preserve these electronic federal records by ordering the Archivist to take appropriate action. *Armstrong v. Executive Office of the President*, 810 F.Supp. 335, 348 (D.D.C.1993). As the Court noted in its earlier decision, there is no implied right of action under the FRA and it is not this Court's place to instruct the Defendants on *exactly* how

to comply with the FRA. *Id.* Therefore, as long as the Defendants are acting to ensure the preservation of the electronic federal records on these tapes, the Court will not proscribe exactly how the Defendants must achieve this objective.

**13.** It is also uncontroverted that the Defendants transferred such tapes from the agencies, that had the means to copy these tapes, to the Archivist, who currently does not have the capacity to do so.

**14.** At the hearing before the court, the Defendants contended that these tapes may have been damaged before the transfer and that the damage was only discovered when the tapes were moved. Even assuming that this is true, the fact remains

fendants contend that these tapes can be repaired, they have not yet attempted to do so. *Id.* at 52:5–53:15. Furthermore, at the hearing before this Court, the Defendants admitted that they would not know if it is possible to fully repair the tapes until they try to repair them. In addition, it is unclear whether such damage may become worse over time. *Id.* at 122. Therefore, the Court cannot rely on the Defendants' representations as to the well-being of the tapes, especially given the sensitive nature of the medium.

### 4. The Preservation Plan approved by the Archivist is inadequate because it does not call for any immediate action to preserve these backup tapes.

The Court does acknowledge that the Archivist has finally announced a "plan" to ensure preservation of these tapes and their contents (over three months after being Ordered to do so). Preservation Plan, Exhibit 19A, Defendants' Exhibits in Opposition, filed April 19, 1993. The Preservation Plan provides, *inter alia,* for the proper storage of these tapes, preservation copying, and maintenance. *Id.* The Acting Archivist approved the Plan on April 16, 1993. Deposition of Kenneth Thibodeau at 2, Defendants' Exhibits in Opposition, filed April 19, 1993. However, the Court concludes that the so-called Preservation Plan does not constitute substantial compliance with this Court's Orders. The Court notes that it has taken the better part of three months to come up with a detailed "plan" to preserve these tapes.[15] More importantly, the Defendants acknowledge that no action has been taken to preserve these tapes under this Plan and that the matter of funding for the Plan has not yet been resolved. Deposition of Kenneth Thibodeau at 24:22–25:22, Plaintiffs' Reply, Exhibit 59, filed May 12, 1993. Furthermore, at the hearing, the Defendants could not tell the Court when the Defendants would begin to take action under the Preservation Plan would take effect. Thus, there is

no guarantee that any of the actions under the "Plan" will take place anytime soon or, for that matter, ever. The Court finds that, because of the delay in putting together and carrying out this "Preservation Plan," many of these tapes may be irreparably damaged.

Based on this record, the Court finds that this behavior and lack of action does not comply with this Court's Order to "preserve without erasure all electronic federal records generated at the defendant agencies" and to prevent the destruction of federal records, including those records saved on backup tapes." *Armstrong v. Executive Office of the President,* No. 89–142, Amended Order at 1–2 (D.D.C. January 11, 1993). While the Defendants may not have intended the transfer to damage these tapes, they are still responsible for the results of their actions. "Even where the court does not command a certain method of compliance, nevertheless there is 'an obligation to provide full and prompt compliance' by whatever means is felt appropriate" *United States v. Greyhound Corp.,* 363 F.Supp. 525, 557 (N.D.Ill.1973), *supplemented by* 370 F.Supp. 881 (N.D.Ill.1974), *aff'd* 508 F.2d 529 (7th Cir.1974). "Having chosen a course of action, [the defendant] must bear the responsibility for the failure of that course of action to achieve its desired end." *Id.,* at 559.

Therefore, the Court finds the Defendants in contempt for their failure to take proper care of these tapes during and after the transfer to the Archivist. The Court shall order the Defendants to take all necessary steps by June 21, 1993 to preserve these tapes, including preservation copying. Furthermore, the Court shall order the Defendants to demonstrate that the materials are being stored under conditions that will ensure their preservation. As mentioned previously, the Court is considering appointing a Special Master to ensure that the Defendants comply with the Court's Orders and the FRA and preserve history.

that many of these tapes have been damaged and that the Defendants have an obligation to ensure that they are repaired before the federal record information stored on them is lost.

15. The Archivist acquired custody of these tapes on January 20, 1993; the Preservation Plan was approved by the Acting Archivist on April 16, 1993. *Id.*

## VI. THE DEFENDANTS' ERASURE OF SIX BACKUP TAPES AND ANY DELAY IN COMPLYING WITH THE ORDERS OF THIS COURT ARE MATTERS THAT MAY MORE PROPERLY BE THE SUBJECT OF A CRIMINAL CONTEMPT PROCEEDING, WHICH THE COURT RESERVES THE RIGHT TO INITIATE AT A LATER DATE.

■ In their Motion for an Order to show Cause, the Plaintiffs complain that the Defendants erased six backup tapes from the NSC and thus destroyed tapes that this Court had ordered preserved in this lawsuit. The Plaintiffs also complain that the Defendants unreasonably delayed complying with this Court's Orders in a variety of ways.[16]

■ It is inappropriate for the Court to address these contentions at this time. Civil contempt proceedings are reserved for those instances where the court acts to ensure compliance by a recalcitrant party. As these allegation concerning past destruction of tapes and delay on the part of the Defendants cannot be remedied at this time, they are not appropriate in a civil contempt proceeding. Malfeasance of this sort that cannot be rectified is a matter of criminal contempt, which is designed to punish the offending party. *Roe v. Operation Rescue,* 919 F.2d 857, 868–69 (3d Cir.1990). However,

the Court reserves the right to bring such a criminal contempt proceeding in the future.[17]

## VII. HAVING FOUND THE DEFENDANTS IN CIVIL CONTEMPT, THE COURT SHALL IMPOSE A MONETARY SANCTION UNLESS THEY COMPLY BY JUNE 21, 1993.

■ Once a court finds a party to be in civil contempt, it must decide what sanctions are appropriate. The penalty imposed may consist of either a monetary fine or imprisonment. *Douglass v. First National Realty Corp.,* 543 F.2d 894 (D.C.Cir.1976).[18] A monetary sanction can be imposed so long as it is designed to coerce the offending party to comply with the court's Orders or to compensate the injured party. *In re Magwood,* 785 F.2d 1077 (D.C.Cir.1986). If a sanction is compensatory, it is payable to the injured party and must be based proof of actual loss. *See In re Chase & Sanborn Corp.* 872 F.2d 397, 400 (11th Cir.1989). If a sanction is coercive, it is paid into the court registry and is based on "the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of America,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947).

---

16. The Plaintiffs allege that the Defendant agencies did not take any steps for 9 days after this Court's January 6, 1993 Memorandum and Order to instruct individuals that they should not erase or delete information from the electronic communications systems used by the agencies. In addition, the Plaintiffs complain that the Defendant agencies also took over a week to disable programs that permit users to delete information (known as the "empty wastebasket" function) and other programs that automatically delete messages (known as "purging"). They also contend that the instructions that were given to staff at that point were not adequate because they still allow staff to delete certain materials subject to the Order (such as distribution lists).

Similarly, the Plaintiffs contend that the Archivist failed to take any steps to make sure that electronic records were not erased during the final days of the Bush administration, contrary to the January 6th Order's explicit directions. No instructions were issued by the Archivist until January 15, 1993. According to the Plaintiffs,

these letters did not reach the heads of EOP components until January 28 and 29, 1993 and still did not instruct the agencies properly.

Again, these matters may very well call for the appointment of a Special Master by the Court to see that the requirements of the law are met and carried out without further delay.

17. The Court notes that in the Motion for an Order to Show Cause, the Plaintiffs stated that "much of the harm caused by the defendants' delay in implementing the requirements of the injunction is irreparable. The only remedy available for the deliberate delay in complying with the Court's order during the final weeks of the Bush administration is criminal contempt." Plaintiffs' Memorandum in Support, dated April 1, 1993, at 24.

18. Some courts have commented that "[i]mprisonment should be a sanction of last resort." *Securities and Exchange Comm'n v. Diversified Growth Corp.,* 595 F.Supp. 1159, 1172 (D.D.C. 1984).

■ In the instant case, the Plaintiffs have not argued that the Defendants' failure to comply with this Court's Orders has resulted in any monetary damage, moreover, the Court finds that any injury suffered could not be adequately measured so as to permit the imposition of a compensatory fine. Therefore, the Court concludes that imposition of any compensatory sanctions is not appropriate. However, the Court's finding that the Defendants are in contempt nonetheless demands some remedial action, and the Court shall impose coercive sanctions in order to ensure future compliance with its Orders.

The Court concludes that it has the power to impose coercive sanctions on the federal agency Defendants in this case. The Court is aware that imposition of monetary sanctions against the federal government often is barred by the doctrine of sovereign immunity. However, the Defendants have not raised a defense of sovereign immunity in their papers or arguments before this Court and, in any event, the Court finds the doctrine inapplicable to the imposition of coercive fines.

Several courts have held that the doctrine of sovereign immunity applies to prevent a court from imposing *compensatory* fines against a government entity in a civil contempt proceeding. *See Coleman v. Espy,* 986 F.2d 1184 (8th Cir.1993); *McBride v. Coleman,* 955 F.2d 571 (8th Cir.1992); *Barry v. Bowen,* 884 F.2d 442 (9th Cir.1989). The rational for applying the doctrine of sovereign immunity in such cases is to prevent a claimant from being "positioned to recover an unlimited amount of compensatory damages from the United States without being bound by the strictures of the Tucker Act or the Federal Tort Claims Act." *McBride,* 955 F.2d at 576.

However, when a court, as in the instant case, imposes coercive fines upon a government agency in a contempt proceeding, these fines are deposited into the court registry and thus, do not allow a party to recover any damages and thereby circumvent Congress' express waivers of sovereign immunity under the Tucker Act or the Federal Tort Claims Act. *See McBride,* 955 F.2d at 580–82 (Lay, C.J. concurring in part and dissenting in part). Furthermore, it has been argued that when imposing any type of fine in a civil contempt proceeding, a court is not granting money damages, and therefore, when the action arises under the Administrative Procedure Act (APA), as the instant case does, Congress has expressly waived all sovereign immunity. *See* 5 . U.S.C. § 702; *McBride,* 955 F.2d at 580–82 (Lay, C.J. concurring in part and dissenting in part).

In any case, the Court finds that the doctrine of sovereign immunity does not prevent the imposition of coercive sanctions against the federal agency Defendants for their contempt of this Court's Orders. In fact, such coercive sanctions are necessary to ensure that "the executive branch of government [does not] treat with impunity the valid orders of the judicial branch." *Nelson v. Steiner,* 279 F.2d 944, 948 (7th Cir.1960).

Under these circumstances, where public interest favors the preservation of the historical material on these tapes, the Court will order the Defendants to take action within 30 days of this Order. Failure by the Defendants to take appropriate action by 4:00 pm. on June 21, 1993, will result in a fine of $50,000 a day for the first week of noncompliance. This fine will double every week thereafter, resulting in fines of $100,000 every day during the second week of noncompliance, $200,000 a day during the third week of noncompliance, with increases in such sanctions reserved thereafter for any further non-compliance with the Orders of the Court. The Court may use such sanctions to pay the expenses of a Special Master appointed to ensure compliance with this Court's Orders and the Order of the Court of Appeals.

## VIII. CONCLUSION

For the reasons explained above, the Court finds that the Defendants are in civil contempt for their failure to fully comply with this Court's Orders of January 6 and 11, 1993. More specifically, the Court finds that the Defendants failed to promulgate new appropriate and proper regulations for the preservation of electronic federal records and that the transfer of 5,839 backup tapes to the Archivist adversely affected the condition of

these tapes and the information contained therein. As the Court has made clear throughout the duration of this longstanding suit, the statutes in this case and the interests of this democratic society mandate that the federal record material in this suit be preserved for historical purposes. Thus, the Court must act today to ensure that these records will be available for the historians of tomorrow. *Armstrong v. Executive Office of the President,* 810 F.Supp. 335, 341–42 (D.D.C.1993).

The Court shall issue an Order of even date herewith in accordance with this Memorandum Opinion.

### ORDER

Before the Court are the Defendants' and the Plaintiffs' responses to this Court's Order of April 6, 1993, which ordered the Defendants to show cause whether they should be held in civil contempt for failure to comply with this Court's Orders of January 6 and 11, 1993. After careful consideration of the parties' submissions, the arguments of counsel, the record in the case and the underlying law, and for the reasons articulated in this Court's Opinion of even date herewith, the Court finds that the Defendants are in contempt of this Court's Orders of January 6 and 11, 1993, and the Order of the United States Court of Appeals for the District of Columbia dated January 15, 1993.

Accordingly, it is, by the Court, this 21st day of May, 1993,

ORDERED that the Plaintiffs' Motion to Enforce valid Court Orders of January 6 and 11, 1993, and the Order of United States Court of Appeals for District of Columbia dated January 15, 1993, shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the Court finds, by clear and convincing evidence, that the Defendants are in Civil Contempt for failing to promulgate new, appropriate, and proper recordkeeping regulations for electronic federal records to replace those regulations struck down by this Court on January 6, 1993. *See Armstrong v. Executive Office of the President,* 810 F.Supp. 335 (D.D.C. 1993); and it is

FURTHER ORDERED that the Court finds the Defendants in Civil Contempt because the transfer of 5,839 tapes from the Defendant agencies to the Archivist has adversely affected the condition of the tapes and the information stored therein. As such, the Defendants' actions are contrary to this Court's Orders to preserve the tapes and federal records contained on them; and it is

FURTHER ORDERED, that in order to purge themselves of this finding of Civil Contempt, that Defendants shall take appropriate action by 4:00 p.m. on June 21, 1993. Such actions shall include, but are not limited to:

—The Defendants promulgating new, appropriate, and proper guidelines for the management of electronic federal records in the Defendant agencies to replace those guidelines struck down by this Court's Orders of January 6 and 11, 1993;

—The Defendants taking all necessary steps to preserve the tapes transferred to the Archivist. These steps shall include all necessary preservation copying and the repair and enhancement of any damaged tapes;

—The Defendants demonstrating to the Court that the materials are being stored under conditions that will ensure their preservation and future access;

and it is

FURTHER ORDERED that, in order to purge itself of this Civil Contempt finding, the Defendants shall notify the Court of their remedial efforts in a written status report, which shall be filed with this Court by 4:00 p.m. on June 21, 1993.

FURTHER ORDERED that failure by the Defendants to take the above-mentioned remedial steps by 4:00 p.m. on June 21, 1993, shall lead to the imposition of a fine of $50,-000 a day for the first week of noncompliance. This fine will double every week thereafter, resulting in fines of $100,000 every day during the second week of noncompliance, $200,000 a day during the third week of noncompliance, and with increases in such sanctions reserved thereafter for any further noncompliance with Court Orders; and it is

FURTHER ORDERED that, in the event that the Defendants do not purge themselves of this finding of Civil Contempt, the appropriate fine shall be paid to the Registry of this Court, and, as indicated, the Court will give serious consideration to appointing a Special Master, pursuant to Rule 53 of the Federal Rules of Civil Procedure, to assist the Court in seeing that its Orders are carried out without further delay.