In re: David A. KESSLER, M.D.,
et al., Petitioners.

No. 96–5257.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 5, 1996.

Decided Nov. 29, 1996.

As Amended Jan. 17, 1997.

Daniel F. Van Horn, Assistant United States Attorney, argued the cause for petitioners, with whom Eric H. Holder, Jr., United States Attorney, and R. Craig Lawrence, Assistant United States Attorney, were on the briefs.

Richard A. Samp, Arlington, VA, Washington Legal Foundation, argued the cause for respondent, with whom Daniel J. Popeo was on the brief.

Before: SILBERMAN and HENDERSON, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

David A. Kessler, M.D., the Commissioner of the Food and Drug Administration (FDA), petitions for a writ of mandamus directing the district court to vacate its order authorizing a notice of his deposition and to enter a protective order prohibiting his deposition. We conclude that mandamus is unavailable and, accordingly, we deny the petition without reviewing the district court's order.

### I.

Washington Legal Foundation, respondent here and plaintiff below, filed suit in the district court against Dr. Kessler, the FDA, and the Department of Health and Human Services, alleging that the FDA's policies and practices with respect to the promotion of "off-label" [1] uses of FDA-approved drugs and medical devices are unconstitutional. Respondent's theory is that the FDA is discouraging (without a formal regulation) the dissemination of information regarding off-label uses of approved products and by so doing is violating the First Amendment. Commis-

---

1. An "off-label" use of an approved product is a specific use for which that product has not been approved by the FDA.

sioner Kessler is alleged to be playing the key role in this initiative.

As part of discovery, respondent served a deposition notice on Dr. Kessler, claiming that his personal testimony is essential to determine the existence, genesis, and parameters of the FDA's policy. The government moved to vacate the deposition notice on the ground that, as a senior government official, Dr. Kessler should not be deposed absent "extraordinary circumstances." *See Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985). The government contended that Dr. Kessler did not have unique, relevant, first-hand knowledge of pertinent information that could not be obtained from another source (several of Dr. Kessler's subordinates were offered in his stead), *see id.,* and that to inquire into his personal deliberations or actions with respect to FDA policy is improper, *see United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (*Morgan IV*). Respondent contends that it needs discovery in order to establish that the "policy" it believes the FDA is following actually exists and, if it does, to define its contours. The district court denied the government's motion (and a motion for reconsideration), finding that respondent had "made an adequate showing of exceptional circumstances to warrant taking the Commissioner's deposition." The government filed this emergency petition for a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651 (1994). A motions panel stayed the district court's order pending resolution of the petition, which we now deny.

## II.

◼ We begin with a rather rudimentary proposition: as a general rule, a court of appeals has jurisdiction only over *"final decisions* of the district courts." 28 U.S.C. § 1291 (1994) (emphasis added); *see DiBella v. United States,* 369 U.S. 121, 126, 82 S.Ct. 654, 657–58, 7 L.Ed.2d 614 (1962). For purposes of appeal, an order holding a litigant in contempt for failure to obey a discovery order is considered final. *See, e.g., Church of Scientology of California v. United States,* 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 452 n. 11,

121 L.Ed.2d 313 (1992) (citing *United States v. Ryan,* 402 U.S. 530, 532, 91 S.Ct. 1580, 1581–82, 29 L.Ed.2d 85 (1971)). Thus, in the ordinary case, a litigant dissatisfied with a district court's discovery order must disobey the order, be held in contempt of court, and then appeal that contempt order on the ground that the discovery order was an abuse of discretion. In seeking a petition for mandamus, the government is, in effect, seeking an interlocutory appeal. It does not matter, however, whether the appeal is evaluated under the principles of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), governing interlocutory appeals, or of mandamus. In practical terms, the difference between the two, at least in this context, is mainly semantic. Under *Cohen,* we ask whether the government seeks to appeal an order that conclusively determines a disputed question separate from the merits of the underlying action and that is effectively unreviewable on appeal from a final judgment. *See, e.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). Under mandamus, we exercise our discretion to issue the writ only where petitioner has shown a clear and indisputable right to it because, for instance, the district court has acted patently beyond its authority. *See Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). In this case, the government argues that the district court's discovery order is improper, and that to hold Dr. Kessler in contempt would itself so injure the government that no appeal could cure the damage. So the two doctrines for circumventing the final judgment rule are both implicated, as is often true. Indeed, we have previously evaluated a petition for mandamus requesting review of a district court protective order under the rubric of *Cohen. See In re Rafferty,* 864 F.2d 151, 153–54 (D.C.Cir.1988).

◼ As best we understand the government's rather confusing position, Dr. Kessler is entitled to immediate relief because it would be constitutionally unseemly for him to be subject to a contempt order. Although this argument, once actually involving Dr. Kessler, has been accepted by several federal

courts, *see In re United States*, 985 F.2d 510, 511–12 (11th Cir.) (per curiam), *cert. denied*, 510 U.S. 989, 114 S.Ct. 545, 126 L.Ed.2d 447 (1993); *United States v. Winner*, 641 F.2d 825, 830 (10th Cir.1981); *cf. In re F.D.I.C.*, 58 F.3d 1055, 1060 n. 7 (5th Cir.1995) (relying on *In re United States* to hold that FDIC could challenge discovery order in mandamus proceeding); *In re Attorney General of the United States*, 596 F.2d 58, 64 (2d Cir.), *cert. denied*, 444 U.S. 903, 100 S.Ct. 217, 62 L.Ed.2d 141 (1979), it would appear that our sister circuits relied, albeit somewhat diffidently, on *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), which allowed President Nixon to appeal a discovery order without being held in contempt. In our view, these decisions did not take into account sufficiently the constitutional distinction between the President himself and subordinate officers in the executive branch. The Supreme Court's recent decision in *Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992), drew that distinction starkly. In dispensing with APA and constitutional claims against the President's role in the apportionment calculation, the Court in *Franklin* emphasized that, for purposes of separation of powers, the President stands in an entirely different position than other members of the executive branch. *See id.* at 800–01, 112 S.Ct. at 2775–76; *id.* at 826, 112 S.Ct. at 2788–89 (Scalia, J., concurring in part and concurring in the judgment); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 811 n. 17, 102 S.Ct. 2727, 2734 n. 17, 73 L.Ed.2d 396 (1982); *Nixon v. Fitzgerald*, 457 U.S. 731, 750, 102 S.Ct. 2690, 2701, 73 L.Ed.2d 349 (1982). Contempt orders have been levied against executive branch officials and agencies without even so much as a hint that such orders offend separation of powers. *See, e.g., Armstrong v. Executive Office of President*, 821 F.Supp. 761, 768 (D.D.C.1993), *rev'd*, 1 F.3d 1274, 1289 (D.C.Cir.1993) (per curiam); *Sier-*

*ra Club v. Ruckelshaus*, 602 F.Supp. 892, 903 (N.D.Cal.1984). That suggests that the *Nixon* Court's concern with delay—since requiring a contempt order prior to appeal could lead to protracted litigation over whether such an order could even issue against the President, *see* 418 U.S. at 692, 94 S.Ct. at 3099—is not really applicable to our case. *But cf. In re United States*, 985 F.2d at 512 (expressing concern that requiring contempt prior to appeal "would prolong the litigation of this tangential issue").[2]

The primary difficulty in accepting the government's argument is that it has no principled stopping point. If the Commissioner of Food and Drug is privileged to appeal a federal district judge's discovery order without being held in contempt, who in the executive branch is not? And it certainly cannot be—the government does not even suggest the proposition—that *all* executive branch officials fall into that category.

The government, it seems, does not regard this line drawing problem to be of any real concern because, as it was argued, whatever the dividing line between those high executive branch officials who are clothed with such constitutional importance as to justify the relaxation of the final judgment rule and those who are not, Dr. Kessler falls on the important side because of his rank and function; after all, he runs an important agency. Ironically, counsel at oral argument admitted that he did not even know Dr. Kessler's actual rank, which, it turns out, is a Level IV: the same grade as the typical assistant secretary of a department or a member of a Commission (Executive Level IV is the journeyman level of those appointed by the President and confirmed by the Senate). It would appear that Dr. Kessler, as the FDA Commissioner, is at least three levels down from the Secretary of HHS. *See* 5 U.S.C. § 5312 (1994); *id.* § 5315. When counsel

---

2. At oral argument, the government pointed out that numerous cases allow appeal *without* contempt of a discovery order directing the disclosure of information claimed to be protected by attorney-client privilege. *See, e.g., Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir.1994). *But cf. Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 655 (10th Cir.1984).

We have also reviewed interlocutory appeals to protect the Speech and Debate Clause privilege, *see, e.g., United States v. Rostenkowski*, 59 F.3d 1291, 1297 (D.C.Cir.1995), but the government does not contend that the rationale of *Morgan IV*, 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429, on which it relies to oppose discovery, amounts to a privilege.

was pressed at oral argument to explain how Dr. Kessler could be distinguished from the more than 350 Level IV appointees within the Administration, he could only suggest that Dr. Kessler is the "head of an agency." We simply do not understand how that statement usefully distinguishes political appointees within the executive branch. Nor do we understand how we should evaluate the government's contention that Dr. Kessler's time is especially valuable and therefore it is an abuse of judicial power to order his deposition. We have no basis—certainly the government suggests none—by which we could ascribe to various presidential appointees a value to their time.

Finally, the government insists that a contempt order against Dr. Kessler would be improper because it raises the specter of Dr. Kessler being held in jail pending compliance with the deposition order. We think this scenario is wholly implausible. It can hardly be disputed that the district court's decision to order Dr. Kessler to be deposed raises a serious legal question. In the event Dr. Kessler does disobey the district court's order and is held in contempt, he will have a right to an appeal. The government's supposed concern that he will be thrown in jail pending that appeal is farfetched.

We deny the petition, and we, of course, express no view on the merits of the discovery order, including Dr. Kessler's status under *Simplex, see* 766 F.2d at 586.